The question submitted to us in this case is of more than ordinary importance. Its decision will result not merely in determining the extent of the punishment of the particular prisoner now before us, but either in establishing in this State a rule of procedure in criminal cases which will most materially affect every individual who may be hereafter charged with offences of a grade inferior to felony, or in rejecting the rule claimed by the prosecution as not founded in sound legal principle or consistent with our system of criminal jurisprudence. For this reason, we have permitted an unusually extended discussion of the question *Page 594 
at our bar, during which we have heard the views of eminent counsel on both sides, and it may be assumed, from the great research displayed in their briefs, that we have been furnished with all the authorities in this State, in England, and in the several States of the Union which, in their judgment, at least, could throw light upon the subject. We have also retained the case under advisement more than the usual time, during which we have given a careful consideration to the authorities cited. It is not my purpose now to review those authorities. Such of them as were mostly relied upon on the argument have been referred to and analyzed in the opinion of my learned brother, ALLEN, J. I propose simply to state the leading reasons which, after full reflection upon the subject, I deem controlling, and which determine me to concur in his conclusions.
In the decision of so grave a question, the consideration whether the punishment inflicted in the particular case is more or less than was justly merited for the offences proved, has no legitimate place. It is the province of courts to declare the law as they find it to be, and adjudge cases accordingly; not to change or strain the law to make it fit any particular case.
The main question now presented for decision is, whether several separate and distinct offences, each amounting to a misdemeanor, upon which an indictment could be framed, may be charged in one indictment in separate counts, and the prisoner put upon his trial for all the alleged offences at the same time, before the same jury; and, in case the jury render a general verdict of guilty on all the counts, or a verdict of guilty on various specified counts, whether the court has power to pronounce a separate sentence on each count upon which the prisoner is found guilty, and thus aggregate sentences on a single indictment and trial to an extent far in excess of the maximum punishment prescribed by statute for the grade of offence for which the prisoner has been indicted and tried.
The bare statement of the question suggests to every mind *Page 595 
accustomed to reflect upon such subjects, the enormous injustice and oppression which might result from the adoption of the rule which an affirmative answer to this question would establish, and discloses how effectually such a rule of procedure would obliterate many of the most valuable safeguards which the law has thrown around the trial of persons accused of crime. Laws are framed not merely to secure the punishment of those who are justly accused, but to afford a fair trial to all and guard against convictions being obtained through improper means or influences. The law, therefore, furnishes, as far as possible, to every defendant, the means of knowing precisely of what he is accused, of securing an impartial jury, and all reasonable opportunity for presenting his defence; and it prohibits the introduction against him of any evidence not bearing upon the question of his guilt of the particular crime charged, and carefully excludes evidence which merely tends to create prejudice against him by showing that he is a person of bad character, or guilty of crimes other than that for which he is upon trial. The generally accepted and recognized principle is, that a man shall be tried for only one crime at a time, and convicted only upon evidence of the commission of that crime, and not upon proof of other crimes which show him to be a fit subject for punishment. If it were proposed at a Court of Sessions or Oyer and Terminer, at which a prisoner was arraigned for trial upon fifty separate indictments for as many different offences, to try all the indictments at the same time and before the same jury, the common sense of every layman, as well as lawyer, would revolt at the proposition; and yet it is claimed that the same result can be accomplished, in cases of misdemeanors, by uniting all the charges in the same indictment. The evils are the same in both cases. Evidence of each misdemeanor would naturally prejudice the jury against the prisoner in determining upon his guilt or innocence as to each of the others. Evidence which would be legally inadmissible as to some of them, would be necessarily admitted if competent as to some other. The prisoner might, himself, *Page 596 
be obliged to introduce evidence to exculpate himself from some of the charges, which would have a bearing prejudicial to him (though, perhaps, illegitimately so) on the trial of the others. The result at which the law aims, of making each criminal charge depend upon its own merits would be frustrated.
If the rule claimed by the prosecution is sound, it is equally applicable, as stated in the opinion of my brother ALLEN, J., to trials before inferior courts or magistrates, upon complaints for petty offences for which they have jurisdiction to impose only a short term of imprisonment. If a vast number of such offences can be united in one indictment and separately punished, they can, with equal propriety, be united in one complaint and tried together, and the result would follow that a magistrate or Court of Special Sessions, to whom the legislature had confided the power of trying only such offences as are punishable by fine or imprisonment not exceeding one year, could upon a single trial sentence a prisoner for a term exceeding the possible duration of his life.
It is clear that the rule claimed is subject to very serious objections, and has little, if any thing, to recommend it, and could only be made useful by being carefully guarded by statutory restrictions. If the public prosecutor finds that several distinct misdemeanors have been committed, and he desires the infliction of a separate punishment for each, he can, under existing law, obtain separate indictments and try each upon its own merits; the prisoner will then be enabled to avail himself of his right of challenging jurors on the trial of each indictment, and the evidence of the prosecution and of the defence will be confined to the matter charged in that indictment, and the punishment proportioned, within legal limits, to the gravity of the offence proved, and even if under an indictment containing several counts, the proofs should disclose that the offences were distinct and might have been the subject of separate indictments, the court can compel the public prosecutor, either during the course of the trial or at its close, to elect upon which count he claims a conviction. *Page 597 
But the rule claimed that the prisoner can be tried at the same time on, as in this case, over fifty different charges, and in case of conviction, punished separately on each, should not, in my judgment, be adopted, unless it can be shown to have been established by authority, to which the court, on the principle ofstare decisis, ought to yield its own convictions of right.
In searching for authority for such a course of procedure, we naturally turn in the first instance to the statutes of our own State. After a diligent search we find there nothing adapted to the enforcement of such a practice or recognizing its existence; on the contrary, all the provisions in relation to indictments, trials and punishment for crimes and misdemeanors, seem to contemplate but a single conviction and sentence on every indictment.
We next turn to the reports of the adjudicated cases in our own courts. From the organization of the judiciary of this State to the present time, notwithstanding the industrious researches of counsel and our own, we are not referred to, nor do we find, a single reported case in which cumulative sentences have been imposed on a conviction of several offences under one indictment, nor in which the power to inflict such sentences has been adjudged. The dicta on this subject, found in some reported opinions, are explained in the opinion of my learned associate, ALLEN, J.
We then appeal to the experience of the members of our own court, several of whom have presided for a great number of years over courts of criminal jurisdiction in this State, and some exercised the office of public prosecutor. None of them, speaking either from experience or tradition, can cite a case in which such a power has been exercised or sanctioned in this State.
It thus appears, as far as a negative proposition is capable of being established, that there is no authority in this State for the course now attempted to be sustained, although occasions for such a course must have frequently occurred, and that we are called upon to introduce a new doctrine into our *Page 598 
jurisprudence contrary to our previous practice, and as I think the majority, if not all, of my brethren will concur with me in saying, contrary to our ideas of order and justice in the administration of criminal law.
Statutes of the United States, and of some of our sister States, and of England, have been referred to, which, in certain cases, and under restrictions, allow the joinder of several criminal charges in one indictment. But these statutes rather disprove than prove the right at common law to pursue that course; else why the necessity of enacting them?
Now, what is the authority upon which we are called upon to introduce into this State this new practice. It is to be found only in the opinions of judges of courts in England, of a date later than that up to which, by our Constitution, we adopted the common law of England; and, unless in a single very recent case, in which the question was not raised or discussed, or any reason given (the Tichborne case), no practical application of the rule appears from any of the cases cited to have been made, cumulating sentences on separate counts to an extent greater in the aggregate than could have been inflicted upon either of the counts alone. Upon the strength of these opinions, elementary writers have stated it to be the law, that various misdemeanors
may be joined in one indictment under several counts, and tried at the same time, and separate convictions had, although it is conceded that, where the offence amounts to a felony, there can be but one conviction and one sentence under one indictment. The same statement has been repeated in some American cases in other States, but as these are few, and those to be found conflict with each other, and none of them are authority here, it is not useful to go into them in detail.
It may not be out of place, however, to remark, in passing, that in Massachusetts, after the practice had obtained in some of the counties, founded on local custom, to unite and try several distinct offences under one indictment, the legislature of that State enacted a statute, providing that "two or more counts, describing different offences, may be set forth in the *Page 599 
same complaint or indictment depending upon the same facts or transactions, provided that the different counts therein are different descriptions of the same act." (General Statutes of 1861, chap. 181.) This is a clear legislative condemnation of the theory of cumulative convictions and punishments under one indictment, as there can be but one punishment for the same act. And even in excise cases, which are a class sui generis, a statute of that State provides "that several parties and offences may be included in the same complaint, and several offences tried at the same time and successive convictions had; but the whole aggregate term of imprisonment under any one complaint or indictment, or at any one term of the court, for such violation, shall not exceed one year." The case cited from Pennsylvania (Commonwealth v. Birdsall, 69 Penn., 482), if deciding what is claimed by the prosecution, is in conflict with the settled law, as well of England as of this State, as it would sanction the union of several felonies. We have been referred to no other precedents in support of the doctrine claimed, which call for special observation, while the general current of judicial sentiment in other States is decidedly adverse to it.
Before we adopt the doctrine that several misdemeanors may be joined, a doctrine of comparatively modern growth, let us see on what ground the distinction is made between felonies andmisdemeanors; whether there is any distinction in principle, so far as this inquiry is concerned, and whether the distinctions assumed to exist under the law of England, even if sound there, have any application under the laws of this State. A very brief examination will show that the reasons assigned in England for this distinction, even if sound there, are totally inapplicable here. In the first place, it is material to observe that the punishment for misdemeanors in England is, or was at the time when this doctrine was enunciated there, in the generality of cases, discretionary with the court; the court had unlimited power to sentence for any term, however long. The term was not, as here, defined and limited by statute, consequently, although a prisoner might *Page 600 
be sentenced to various successive terms of imprisonment on different counts in the same indictment, it could not be said that the aggregate of these terms was greater than the court had power to impose, if it chose to do so, on either one of the counts.
But the main reasons assigned in the English cases for the distinction, in this respect, between felonies and misdemeanors, are these: The judges say that a prisoner cannot be tried for various distinct felonies under one indictment, because it would embarrass him in his defence, confound the jury and confound the prisoner, and prejudice him in his challenges of the jury; the law of England allowing to the prisoner a certain number of peremptory challenges in cases of felony. But they say that this objection to the joinder of several offences in one indictment does not exist in cases of misdemeanor, because in those cases, by the law of England, the prisoner has no right of peremptory challenge; hence, although different felonies cannot be tried under the same indictment, different misdemeanors can.
It is not easy to perceive why uniting several charges of different offences in the same indictment is not as likely to embarrass the prisoner in his defence, and confound him and the jury, in cases of misdemeanor, as in cases of felony. But, perhaps, the English judges, in view of the entire control which they could, in general, exercise over the conduct of the trial, and the amount of punishment to be inflicted in cases of misdemeanors, considered that it was in their power to adjust any difficulties which might arise in that class of cases, while they could not exercise like powers in cases of felony where the punishment was prescribed by law. Here, the punishment in cases of misdemeanor is limited by statute in all cases. I may not have given a very good explanation of the grounds of the distinction made in England between indictments for misdemeanors and felonies, but, if so, it is owing to the difficulty of finding any better ground for such distinction, so far as confusion on the trial is concerned. The essential difference, however, between the law of this State *Page 601 
and that of England, and one which entirely destroys the reason upon which the alleged distinction there depends, is, that in this State the right of peremptory challenge is secured by statute in cases of misdemeanor, as well as in cases of felony; and the reason assigned in England for not allowing a prisoner to be tried for several felonies at the same time applies here with equal force to trials for misdemeanors.
Had the charges preferred in the several counts of the indictment, in the present case, constituted felonies, as defined in our statutes, and had the court, on receiving the verdict of the jury convicting the prisoner upon all or any number of the counts, rendered separate sentences upon each, for successive terms of imprisonment, exceeding in the aggregate the maximum
which the court was empowered, by statute, to impose for the offence charged in any of the counts, I think it safe to assert that, in respect to the excess, there could be no difference of opinion in this court, at least, as to the nullity of the sentence in respect to the excess. If, therefore, as I have endeavored to show, it possessed no greater power on conviction upon an indictment for misdemeanors than upon an indictment for felonies, the conclusion is very plain and simple, that so much of the sentence as exceeds the bounds of the maximum term of imprisonment authorized by law for any of the misdemeanors of which the prisoner was convicted, is void for want of power in the court to render it.
A brief reference to some of the statutes in relation to misdemeanors, and to that upon which the prisoner was indicted, may throw some light upon the subject.
The offence for which the prisoner was indicted and tried in this case, was willful neglect of a duty enjoined upon him by law, viz., that of auditing certain liabilities of the county of New York, under the act of 1870. Whatever other offences he may have committed, that was the only one for which he could be punished in this prosecution. The statute under which he was indicted reads as follows (2 R.S., 696, § 38): "When any duty is, or shall be enjoined by law upon any *Page 602 
public officer, or upon any person holding any public trust or employment, every willful neglect to perform such duty, when no special provision shall have been made for the punishment of such delinquency, shall be a misdemeanor, punishable as herein prescribed." Section 40 (p. 697), declares the punishment, and provides that "every person who shall be convicted of any misdemeanor, the punishment of which is not prescribed in this or some other statute, shall be punished by imprisonment in a county jail, not exceeding one year, or by fine not exceeding $250, or by both such fine and imprisonment." Clearly there is nothing in this provision which points to more than one conviction or punishment on any one indictment. The indictment in the present case, contained 220 counts, each of which assumes to charge a separate willful neglect of duty — supposing that the matter charged in each count constituted a separate offence for which the prisoner might have been separately indicted, and tried and punished. Yet when they are all united in one indictment, and trial, we find no satisfactory authority for the rendition of more than one judgment, although the prisoner may have neglected his duty on 220 occasions, and the charge of neglect of duty may have been proved against him on the trial 220 times over; all that the court had power to adjudge, was that he was guilty of a misdemeanor, and should receive the maximum punishment for that offence prescribed by the statute. The very next section of the statute shows cumulative punishment on one trial could not have been dreamed of by the legislature. Section 41 provides that "the court before whom any person shall be convicted of an offence punishable by imprisonment in a county jail" (which is this case), "may sentence such person to imprisonment in a solitary cell in such jail, if any such be erected, but such imprisonment shall in no case exceed thirty days in the whole." Here it is seen that the severity of that description of punishment, solitary confinement, is recognized by the legislature, by providing that where it is inflicted the whole imprisonment shall not exceed thirty days, that being treated as *Page 603 
equivalent to one year of ordinary imprisonment. Can it be conceived that the legislature intended or supposed that in a case like this 220 offences could be charged, and fifty-five convictions had, each of an offence punishable by imprisonment in a county jail, and fifty-five successive terms of solitary imprisonment, of thirty days each, inflicted — a punishment which writers upon the subject have stated is regarded as more severe, even, than the death penalty, and one which but few prisoners can long survive. That this doctrine of cumulative punishments on one indictment could never have entered the mind of the legislature, is made still more clear by reference to the general provisions relating to misdemeanors. Take one instance: 2 Revised Statutes, section 26, provides that "Every person who shall by his act or neglect maliciously kill, maim, wound, injure, torture or cruelly treat, any horse, mule, ox, cattle, sheep, or any other animal belonging to himself or another, shall, upon conviction, be adjudged guilty of a misdemeanor." Suppose one were convicted under one indictment containing 100 counts of ill-treating 100 different sheep; the rule sought to be introduced by the prosecution, if established, would authorize the court to sentence him to 100 years of imprisonment, or 100 terms of thirty days each of solitary confinement. If the power exists to inflict cumulative sentences, such a sentence as is supposed could not be reviewed by a higher court, for it would be a mere exercise of judicial discretion within legal limits, and not an error of law. On convictions for misdemeanors, which are regarded under our statutes as offences of the lightest grade known to the law, and are triable in the lowest courts, those courts might impose heavier sentences than the highest criminal courts would have power to inflict for the most aggravated felonies. No such incongruity should be imputed to our law.
For the reasons which I have stated, I am of opinion that, upon any indictment for misdemeanor, no matter how many counts it may contain, or whatever may be the form of the verdict, the power of the court to sentence is restricted, as in *Page 604 
cases of felony, to the maximum punishment allowed by statute for the highest offence charged in the indictment; and that separate and cumulative punishments can only be secured by separate indictments and trials for each offence. If my brethren concur with me in this conclusion, the right to be relieved from further imprisonment, by means of the writ of habeas corpus, seems to me very plain. That remedy is available to every person illegally detained. The suggestion is made that, under our statute, a party detained "under a final judgment or decree of any competent
tribunal of civil or criminal jurisdiction" is precluded from the benefit of this writ. That objection is, I think, sufficiently answered in the opinion of my learned brother, ALLEN, J. According to the terms of the statute, the court, under whose final judgment the prisoner is detained, must be not only a court of civil or criminal jurisdiction, but it must be competent. This word can have no operation unless it means competent to render such judgment. The further suggestion that, under the forty-second section of the habeas corpus act, the "legality or justice" of any judgment or execution cannot be inquired into onhabeas corpus, is met by a reference to the section immediately preceding, the forty-first, which expressly declares the right, in proceedings under that writ, to inquire into the question ofjurisdiction; thus showing that the terms "legality and justice," as used in the forty-second section, were not intended to include questions of jurisdiction or power. If, upon a conviction for a misdemeanor, a prisoner were sentenced to be imprisoned for the statutory term and then hung, and he were detained after the expiration of the legal term for the purpose of carrying the latter part of the sentence into execution, the argument used in support of this objection would maintain that the writ of habeas corpus would not be effectual to liberate him. Yet the writ was decided to be effectual for that purpose by the Court of King's Bench, in an analogous case, as long ago as 1752. (Rex v. Collyer, Sayer, 44.)
For all these reasons, as well as those stated by my brother *Page 605 
ALLEN, J., I am of opinion that the power of the court was exhausted when it had imposed the first sentence of one year's imprisonment and $250 fine; and that it then ceased to be competent to render any further judgment in the case. That term of imprisonment having expired, and the fine paid, the prisoner is entitled to be discharged.
All concur; MILLER, J., concurring in result.
Judgment of Supreme Court and order of Oyer and Terminer reversed, and ordered that prisoner be discharged. *Page 606